```
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MARYLAND
------------------------------------X
PATRICK A. BYERS, JR.,                         28 USC §2255

            Petitioner,                        Civil Action No.

     vs.                                       _____

UNITED STATES OF AMERICA,                      MOTION ATTACHMENT,
                                               re Grounds 1-6
            Respondent.
------------------------------------X
```

### GROUND ONE

PATRICK A. BYERS, JR.(Petitioner)trial counsel, WILLIAM B. PURPURA, JR.(WBP), was ineffective for the following reasons which violated Petitioner's sixth amendment rights protection of the Constitution:

a)WBP failed/refused to adhere to Petitioner's direct orders and requests to investigate/acquire/pursue, or otherwise, exculpatory leads, such as but not limited to, text messages and other records relating to the cell phone that was alleged to be Petitioner's, and/or alleged to have been the cell phone used to order a murder, and/or otherwise used to tie Petitioner to a cell phone that was not his, that many people used(too numerous to name, imagine, contemplate).

If WBP had been effective Petitioner would have had physical evidence DURING TRIAL which would have proven MR. PEARSON(Gov't's witness who lied against Petitioner at trial, re cell phone ownership and other issues)lied against Petitioner, and these lies by PEARSON, INEFFECTIVELY INVESTIGATED AND DOWNRIGHT IGNORED by WBP, allowed the jury to connect Petitioner with a cell phone that is not his, never was his, and was not used by Petitioner to conduct any illegal activity, much less order a murder.

WBP insisted that the records, Petitioner requested at first, then later ordered and demanded, were not kept, could not be located, obtained, or otherwise accessed. WBP's statements to Petitioner and actions

are/were contrary to Petitioner's co-Defendant's counsel, who secured his text, phone, etc., records for his trial. Petitioner does not have the name of his co-Defendant's counsel, but will provide it, and subpoena said counsel who will testify contrary to the claims of Petitioner's ineffective counsel, WBP.

Petitioner has attached the phone records that WBP stated vehemently to Petitioner that he could not acquire prior and during trial. These phone records prove the jail's phone expert lied in the trial testimony against Petitioner, but in relevance to this 2255 they prove that if WBP had been even remotely effective Petitioner would have impeached the jail's phone expert, and proven that the phone evidence in this case was not showing Petitioner circumventing the phone security as the prosecution led the jury to believe, an imperative part of Petitioner's defense as was ineffectively handled causing Petitioner's inability at trial to prove expert was lying. Petitioner submits this proof now as Exhibit 1.

CONCLUSION and EVIDENTIARY SUPPORT, re GROUND ONE

Wherefore, Petitioner's submission of phone records(Exhibit 1)that WBP alleged were not available/accessible at the time of trial, proves WBP failed/refused to effectively assist Petitioner in his constitutionally, and otherwise sworn duties, to protect the rights of Petitioner, and the bottom line is that Petitioner's access to these phone records could've been instrumental in the jury's verdict, which literally led to Petitioner's loss of liberty for LIFE!

Hence, Petitioner prays, humbly and respectfully requests, for an evidentiary hearing wherein Petitioner will produce corroborating witnesses and other testimony supporting the above claims for relief in GROUND ONE, such as, including but not limited to, the following:

1. Jason Torbit will testify under oath to the history of relative(to this case, trial, 2255 proceeding)phone calls between himself and other

-2-

inmates at Baltimore City Detention Center during the time periods that relate to Petitioner's alleged charges, phone ownership, and otherwise, showing that an unacountable number of inmates housed in the detention center unit where the cell phone was located had access to it, and anyone of them could've been the owner, and showing a pattern of Federal Gov't agents' attempts to coerce false testimony out of potential witnesses in exchange for Torbit's state gun charge being "ignored" by the Feds. WBP failed/refused to contact or subpoena, if necessary, Torbit to the stand. WBP told Petitioner he could not locate Torbit, but Torbit will testify in any future hearing, under oath, that he(Torbit) called WBP relentlessly and WBP failed/refused to call him back.

2. Malcolm Stewart will testify corroboratively with testimony of Torbit that the phone was not Petitioner's, but was his.

3. Ms. Davinya Winchester will testify, under oath, to the volatile history between Petitioner and PEARSON that involves a love triangle between Petitioner, PEARSON, and a woman PEARSON was in love with, which is the real/true motivation behind PEARSON's lying against Petitioner. PEARSON admitted openly to Ms. Winchester that he's going to do his best to make sure Petitioner never gets around "his girl" again. PEARSON followed thru with his threats/promises to Ms. Winchester.

WBP was ineffective because Petitioner repeatedly instructed him to contact Ms. Winchester, to subpoena her if necessary, and that she had evidence that could impeach the testimony of PEARSON. Again, WBP told Petitioner she could not be reached, but that's not true, and Ms. Winchester at any future evidentiary hearing, will testify to repeatedly calling WBP, and WBP never returning her calls, finally having his secretary at his law offices, tell Ms. Winchester that Petitioner did not

-3-

need her, making is. Winchester believe it was Petitioner telling her to not testify that she wasn't needed.

3. Steven Thompson will testify under oath at any future hearing that PEARSON had been talking/planning "long before" Petitioner's indictment, trial, etc., how to get Petitioner "out of the way," whether by killing him, planting a gun on him, getting him "locked up," etc.

WBP failed/refused to contact this witness, subpoena him, and, as described above, ignored his attempts to meet, speak, or otherwise, with WBP to provide evidentiary support for Petitioner, showing PEARSON's true motive for his lies told at Petitioner's trial.

4. Michael Randle will testify "similarly" to Mr. Thompson, and corroborate PEARSON's ulterior motive to want to "get rid of" Petitioner by killing him, setting him up, or otherwise.

WBP treated this witness with the same disregard as the above. To save the court redundance Petitioner simply adopts WBP's above actions, re contacting witnesses, returning their calls, etc.

5. Jamar Saunders will testify to the cell phone discovered in Supermax being his, NOT Petitioner's, and to the repeated attempts, threats, coercions, etc., made by the prosecution to get Saunders to lie and say the phone was Petitioner's, in exchange for his freedom, wherein the government prosecutor offered to "make the 15 years in prison" he was pleading to "go away" if he'd testify to the cell phone being Petitioner's, and that Petitioner confessed the Haynes and Lackl murders to him.

WBP was instructed by Petitioner to aggressively pursue this evideniary witness, but once again WBP invented some reason why it couldn't be used, why he hasn't interviewed "Saunders," etc., etc. Petitioner, not understanding the law, and believing(at the time)that WBP had his best interests at heart remained patient, but was adament that Saunder's be

-4-

contacted, interviewed, deposed, and subpoenaed during trial, WBP failed/ refused to effectively carry out his client's instructions.

For the above reasons, an evidentiary hearing should issue to get all the evidence in the record that WBP failed to after being repeatedly instructed by Petitioner. These failures conclusively confirm repeated violations of Petitioner's 6th Amendment right to effective counsel.

## GROUND TWO

Petitioner's counsel, herein WBP, was ridiculously ineffective for the following reasons which violated his rights to 6th Amendment protection:

a) WBP failed/refused to adhere to Petitioner's instructions, even to the extent of misleading Petitioner, and his potential witnesses, by not even attempting to obtain video footage of Baltimore Local News and other news broadcasts, that would've shown that PEARSONS's lies(testimony) was "word for word" what he saw/heard on the news broadcasts.

Petitioner has private investigators retrieving this news footage for any future hearing.

WBP promised Petitioner he'd get the footage, but never did, then lied to Petitioner(discovered long after trial)about why. Telling Petitioner the Judge would not allow such extrinsic(or some word like that Petitioner did not understand)evidence.

Petitioner, private investigators, or otherwise, have talked to, interviewed, deposed, or otherwise contacted witness that can/will support the above claims made by Petitioner, as Petitioner had others contact WBP in attempts to access said footage, and these witnesses will state under oath that WBP was unreceptive, unresponsive, or otherwise, evidencing "a pattern" of ineffective, intentional, or otherwise, counseling.

-5-

## GROUND THREE

Petitioner adopts the same, or relatively similar, introductory paragraph as stated in Grounds One and Two, re ineffectiveness of WBP to adhere to any of Petitioner's instructions, contact, call, investigate witnesses, evidentiary needs, etc., and his failure to contact Petitioner's witnesses or subpoena them for trial, as well as evading those that attempted to contact him.

The government called upon a control "expert" from the jail's phone service provider to testify that defendant was purposely only used the jail phone in his block/unit from March 2006 thru April 2006, implying that defendant was purposely evading the jail's telephone security systems.

WBP failed/refused to secure these records after being repeatedly instructed by Petitioner. This record, which Petitioner now possesses, some of which is now submitted to the Court in/with Exhibit 1, shows the government's accusations to be flawed and could've produced a different outcome, if WBP effectively acquired them as instructed by Petitioner, as was his constitutional obligation under the 6th Amendment. "The probability of a different outcome" increases exponentially if Petitioner would've been able to come forth with evidence that was contrary to the prosecutor's "expert" testimony, as inaccuracies create "doubt," and with doubt a jury could not conclude a guilty verdict.

## GROUND FOUR

Petitioner claims WBP was ineffective in accessing, interviewing, subpoenaling, contacting, calling back, or otherwise, witnesses that possessed evidence absolutely contrary to the prosecution's after being repeatedly instructed to do so, even to the extent of evading and misleading Petitioner, and his witnesses, as to what the complications, excuses,

-6-

reasons, or otherwise, were for not returning calls, putting these witnesses on the stand, etc., failing in his duty to effectively assist Petitioner, hence, violating his 6th Amendment right to due constitutional protections, re the murder of Larry Haynes, which prejudiced jurors beyond measure, that Petitioner had nothing to do with, and the following witnesses will testify in support of Petitioner when called upon to take the stand in any future evidentiary hearing, as their below testimonials have been relayed to Petitioner or his hired private investigator, and all have agreed to swear such under oath in front of the Hon. Court.

WBP could have contacted any one of these witnesses, as well as simply returned the calls to those that contacted him. He failed to and gave Petitioner a litany of excuses as to why he did/could not.

WBP could've easily secured the "phone records"(a pattern is evolving here)that would've verified that Petitioner was no where near the location of Mr. Haynes when he was murdered, but Darrell Briggs was, and Mr. Briggs was available at trial, as he is for any future hearing, to testify that he witnessed the Haynes murder, he knows who did it, and why they did it, also, that it had/has nothing to do with Petitioner. Infact, it had/has somthing to do with HOGAN, which is why Briggs immediately called Petitioner(which phone records can/will confirm, as well as the sworn testimony of Briggs)to not only notify of the Haynes shooting but to warn him that HOGAN was involved(directly/indirectly)so for Petitioner to keep his eyes open, as everyone was aware of the beef(problems) between HAYNES and HOGAN.

This is another instance that WBP could've easily been effective with and provided the jury with evidence, available to him, contrary to the government's allegations, which could've created doubt, and greatly

-7-

increased the probability of a different outcome. The ineffectiveness of WBP forfeited the possibility of a different outcome, and all Petitioner desires is an opportunity for all the evidence to be heard, and this is what the constitution and this great country stand for.

Witnesses available for any future evidentiary hearing are as follows, with a brief summary of what they will swear to under oath:

1. Darrell Briggs(an actual witness to the Haynes murder, who has intimate knowledge of the matter, the man himself, who wanted him dead, why, etc.)will testify to being with Mr. Haynes when Mr. Haynes was murdered by gunshot(s), and that the killer that fired at Mr. Haynes and himself(Briggs)was not Petitioner. He will testify to Haynes' telling him that HOGAN and he heard rumors that HOGAN would be getting at him soon.

2. Renardo Robinson will testify that the trial testimony of Detective Jenkins was filled with lies to cover up the fact that this same Detective had "worked with" Petitioner, on numerous occasions, "outside of the law," to include but not limited to, Jenkins' acceptance of multiple firearms, cash, and otherwise, to make Jenkins "look good," and Jenkins would then notify Petitioner of who informants were, make charges or investigations "go away," etc.

3. Terrence Whitworth will testify to the relative same as Mr. Robinson, and has agreed to be available to testify to the same under oath in any future evidenciary hearing, as well as other inaccuracies, in consistencies, and out and out lies testified to by Jenkins during Petitioner's trial, all done to "cover" for the possibility that Petitioner might reveal the real story.

4. Reginald McNeil, Robert Little, Joey Fitzgerald will testify that the trial testimony of Detective Jenkins was intentionally inaccurate,

-8-

and corroborate the testimony(ies) of Mr. Whitworth, and Mr. Robinson, that show Detective Jenkins is/was a well known "dirty cop," who tossed Petitioner under the bus to muddy the water in case Petitioner came forward with the truth.

5. Dorsey Ebbs will testify to being present at the Haynes murder, that Petitioner was not the killer, nor was Petitioner any where near the location of the Haynes murder.

6. Wilton Hunt will testify to being at the locations of the Haynes murder, on camera in a store five feet away from the actual murder, and attest to Petitioner not being the killer.

7. Tair Pollard will testify that the government's motive alleged and used against Petitioner, re alleged reasons for murdering Haynes are entirely amiss as Pollard was privy to a conversation where Byers and Goodman with three others were discussing who killed Byers' cousins. Clearly that testimony will show that they were discussing the alleged killers as Cory who was charged with the murders and "Ghost" mentioned, as well, never anything the government alleged as to HAYNES who had nothing to do with Byers' cousins fate. This testimony could've established the doubt necessary for the jury to come to a different verdict.

8. Toshiba Ross will testify similarly, as stated above to the perjury of Detective Jenkins.

9. Shanise James will testify to being at the carwash located at Madison and Patterson Park, several blocks from the Haynes murder scene, which was at Monford and Jefferson. She'll also testify to overhearing the phone call Briggs made to Petitioner warning him to be careful be-

cause they just got HAYNES, as Petitioner spoke on the phone with Briggs, in front of Ms. James, then spoke to her about it after he hung up.

10.  Kevin Cade(Haynes younger brother)will testify on behalf of Petitioner showing that it is well known that Petitioner did not kill Haynes, nor did he have any connection to the murder, as there's no way he would testify to help the killer of his elder brother.

11.  Nitra Conway will testify to events that contradict those that Detective Jenkins stated during his trial testimony, re Petitioner, including corroborations of the above witnesses, as well as direct knowledge she possesses.

Wherefore, WBP was instructed to call these witnesses to the stand, was obligated to investigate their testimony, depose them, or simply question them, re the information given to him by Petitioner. WBP failed/ refused doing so, and evaded several of these witnesses who contacted him themselves. WBP even misled witnesses into believing Petitioner did not want or desire their testimony, and WBP kept putting off Petitioner's pleas to call them to the stand by telling Petitioner he would, but "now's not the time, be patient," etc., stressing to Petitioner his decades of trial experience. Petitioner cannot definitively conclude WBP's ineffectiveness was "intentional," but it sure was "obviously"ineffective. Any ONE of these witnesses, much less ELEVEN, could've caused a "different outcome" if put on the stand by WBP, as requested, instructed, ordered, etc., by Petitioner.

## GROUND FIVE

Petitioner further claims and evidences WBP's ineffectiveness with witnesses(as above described and adopted in relevant part)that would've

-10-

contradicted the government's allegations, re the COLEMAN matter, as this was another false allegation against Petitioner in the government's attempt(in hind sight successful)to paint a certain picture of Petitioner that just is not accurate. The below witnesses will testify at any future hearing in support of Petitioner and swear to the following:

1. Beverly Gibson will testify that she was present at the COLEMAN shooting and that Petitioner was not there and that Petitioner was not the shooter.

2. Edna Booze will testify that she also was in Court, accompanied by Petitioner, at the date and time of the Coleman shooting, further verifying the impossiblity of Petitioner being the Coleman shooter as the prosecution implied to the jury.

3. Robert Little will testify to witnessing the Coleman shooting, and that Petitioner was not the shooter. He will also swear that Coleman and his older brother(Clinton Little, now deceased)got into a physical confrontation, relayed the same to Terrance Whitworth, causing Whitworth to go find Coleman and beat him with a broom stick, which led to Troy Wilson, acting out of loyalty of his friends, to shoot Coleman.

4. Troy Wilson is now deceased, but Robert Little will testify that it was Wilson that shot Coleman, not Petitioner.

5. Terrance Whitworth will testify to the same stated in ¶4 by little.

GROUND SIX

Petitioner's counsel failed/refused to communicate with Petitioner during the appellate process, and refused to include Petitioner's requests of ineffective assistance based on WBP's failure to present all

-11-

the witnesses, evidence, and otherwise, Petitioner provided him. WBP said he was "tired of Petitioner's complaints and ceased communication," effectively forfeiting Petitioner's opportunity to "challenge the search" of his jail cell, which would've eliminated the prosecution's angle that the phone, or otherwise inconclusive gray area evidenced used against Petitioner, was Petitioner's when it WAS NOT. Supreme Court determination is unresolved, U.S. v. Cohen, 796 F.2d 20(2nd Cir. 1986)and the 4th Cir. is split[U.S. v. Jeffus, 22 F.3d 554(4th Cir. 1994) on this issue, re cell search, due to so many inmates having access to each others cells.]

It was WBP's duty to pursue this angle, as Petitioner instructed, but WBP, as always, stated that he would then did whatever he wanted, to the certain prejudice of Petitioner's defense.

GROUND SEVEN

Re: Governmental misconduct, and misconduct of other law enforce-agencies/agents, re their intimidating, threatening and attempting to coerce false testimony, against Petitioner, out of the below listed witness, Joseph Parham, Tair Pollard, Jason Torbit, Jamar Saunders, Whitney Mears, Patrick A. Byers, Sr.(now deceased), but numerous family members will testify to the fact that Petitioner's father committed suicide because he could not live with himself after falling victim to this alleged coercion), Kisha Newsome.

Petitioner directed WBP to contact, interview, depose, contact, or otherwise, the above for this testimony, and WBP's failures/refusals were comparable, give or take an excuse here or there, to the same herein throughout stated.

These witnesses, having taken Petitioner's life on lies forced thru threats and coercion, have collectively stepped forward, have apologized to Petitioner and his family, have given statements to private investi-

gators, and will be available at any future hearing to recant the lies told at Petitioner's trial, which secured a murder conviction against Petitioner that occurred while Petitioner was in jail.

WBP was constitutionally required to interview these witnesses, as instructed by Petitioner prior to trial. These witnesses will confirm that he did not, yet WBP told Petitioner that he did "talk to them," and all were sticking to their stories. Then when some decided not to, post trial, and contacted WBP, which would've provided incredible appellate evidence, he failed/refused to return their calls.

## GROUND EIGHT

WBP's lack of effectiveness forfeited Petitioner's rights to 14th Amendment protection under the constitution, re racial discrimination, per standards set forth constitutionally, in relation to Death Penalty Prosecutions(which Petitioner's began as), race of victims playing a statistically lopsided role in the determinations between white on black crime, black on black crime, and black on white crime(which relates to Petitioner's Death Penalty case), which have proven to be discriminatorily relevant, creating a constitutional issue in this matter.

WBP failed/refused to use the above, and otherwise herein stated, to effectively defend(during trial and the appellate process, as requested by Petitioner)Petitioner, a young black boy accused of killing a white man, with the jury prejudiced by the case initially beginning as a death penalty case. Petitioner was labeled as a dangerous black boy by the prosecutor, media, which coerced the general public(where the field of jurors was extracted from)into believing Petitioner was guilty before a shred of real evidence was ever produced. The populace being predominantly of the white race made it much easier for this to occur, and the statistics show such.(see: Exhibit 2, ACLU data addressing The Persistent Problem of

Racial Disparities in the Federal Death Penalty System, attached hereon). These ACLU statistics evidence that Petitioner is/was half as important as a white defendant who allegedly killed a black person, and/or that Mr. Haynes was half as important as Mr. Lackl, or that Lachl's unfortunate death, and his family's grief, is twice as important as Mr. Haynes, or his family's, or even Petitioner, or his family, because it seems that when a white man dies "someone"(and it doesn't always matter who)must pay, and Petitioner, who did not kill Mr. Lackl, ended up being the payor. No disrespect to the Court, but Petitioner's life, and the future of his family are at stake, so these statistically supported claims must be brought forth, and the fact that WBP failed/refused to broach these statistics, or raise these issues when instructed by Petitioner shows more than ineffectiveness, it show that Petitioner was "half as important" in the eyes of his own counsel.

    Petitioner asserts the above stated supporting facts, supported by the attached affidavit of Petitioner, and humbly and respectfully prays to the Hon. Court for relief, by the Court granting Petitioner an evidentiary hearing so that Petitioner can put into evidence all the witnesses sworn testimony that his trial counsel failed/refused to. Petitioner requests no further relief until the Court is able to hear all the facts and testimonies, which will show the Court that Petitioner is actually innocent of counts 1-4 of the indictment, and has mitigating circumstances for count 8, which evidentiary witnesses will testify to, re Detective Jenkins implicating Petitioner possessed a firearm to the Detective, at the Detective's request, for considerations, to be further supported by the direct testimony of Petitioner.

    Being that this 2255 proceeding is not to re-try the matter, Petitioner simply desires to respectfully stress that his vital 6th Amend-

ment claim for relief is based on the ineffective assistance of his trial counsel, which seemingly went beyond the realm of incidental, accidental, or otherwise, but delve into the home of conspiracy, wherein Petitioner can only believe now(of course hindsight is 20/20)that his trial counsel intentionally threw the trial, because there's no way a highly educated attorney could be that incompetent, fail to call witnesses that supported his defendant, etc.,etc. Petitioner states this with the knowleged that it's unverifiable, but it's not unsupportable, as all the herein identified witnesses will testify to in an evidenciary hearing, if this Hon. Court would be so just as to grant such.

Petitioner is also open and completely receptive to whatever form of relief the Court deems fair, equitable and appropriate, as Petitioner is not saying he is 100% innocent of all charges, but he is saying that he is innocent of indictment counts 1-4 and 8, and is willing to accept, agree to, or otherwise, a plea bargain to lesser charges, as he accepts he owes a debt to society and is willing to pay what he owes. He is requesting relief from payment he does not owe. No more no less.

Petitioner thanks the Court for its time, consideration, and for its patience in providing Petitioner extra time for his private investigator to reach said witnesses, and for the Court to know that Petitioner is working on, by and thru family, financial issues so that he can pay his counsel the remainder of the money he owes, and said counsel will be appearing on behalf of Petitioner, re this matter, at a later date.

Dated: January 31, 2013. Humbly and Respectfully submitted,   Vigo County, Indiana.

Patrick A. Byers, Jr.