**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Respondent,** | * | |
| | * | **CRIMINAL NO. RDB-08-056** |
| **v.** | * | **CIVIL NO. RDB-12-2348** |
| | * | |
| **PATRICK ALBERT BYERS,** | * | |
| | * | |
| **Petitioner.** | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S OPPOSITION TO PETITIONER'S**
**AMENDED 2255 PETITION (ECF 543)**

## I. INTRODUCTION

On July 2, 2007, Carl Lackl was brutally murdered in front of his home.  He was shot three times, in full view of his young daughter.  The person who ordered this murder was Petitioner Patrick Byers.

Byers ordered the murder from prison as he was facing separate murder charges for his role in the murder of Larry Haynes.  Lackl was the only eyewitness who would testify, and Byers wanted him eliminated.  Byers succeeded.

A federal jury ensured that Byers' success was short-lived.  On April 17, 2009, after a 28-day trial, the jury returned guilty verdicts against Byers on seven counts, including murder for hire conspiracy, conspiracy to murder a witness, and use of a firearm during a crime of violence resulting in death.

Since being convicted, Byers has lodged all manner of challenges.  All have been rejected.  He filed a direct appeal, which the Fourth Circuit rejected.  *United States v. Byers*, 649 F.3d 197 (4th Cir. 2011).  He then filed a 2255 petition, which this Court denied.  ECF 456.  He

then sought authorization to file a second 2255 petition, which the Fourth Circuit denied. *See* Appeal No. 18-326. He then filed another request to file a second 2255 petition, which the Fourth Circuit also denied. *See* Appeal No. 21-292.

Notwithstanding all of this process and scrutiny of his convictions, Byers now wants yet another bite at the apple. Specifically, he originally sought discovery, ECF 474, which this Court construed as a request to amend his original 2255 petition to challenge his convictions on Counts Three, Four, and Eight, ECF 534. Then, not content with the extraordinary relief this Court gave him, Byers has now filed a motion to vacate *all* of his convictions. ECF 543.

Byers' latest 2255 motion must be denied, for a number of reasons.

First, Byers' habeas petition should be denied because this Court is without jurisdiction to entertain it. Because Byers' claims go to the merits of his convictions, Byers' motion must be deemed a habeas petition under 28 U.S.C. § 2255. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005); *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003). And because Byers had previously filed a habeas petition, this motion must be deemed a successive petition, which only the Fourth Circuit has the jurisdiction to permit. Unless and until the Fourth Circuit allows Byers to file a successive petition, this Court lacks jurisdiction to even entertain Byers' filing. *United States v. Goods*, 2021 WL 5563930 (4th Cir. Nov. 29, 2021) (affirming this Court's finding that it lacked jurisdiction over a successive petition where Fourth Circuit had not first authorized the filing) (citing *United States v. McRae*, 793 F.3d 392, 397-400 (4th Cir. 2015)). This Court previously reserved on this issue. ECF 539 at 3. The question is now ripe. Now that we can see Byers' claims, it is clear that jurisdiction is lacking over them. This Court must dismiss.

Second, Byers' motion should be denied because his challenges are time-barred and do not relate back to his original 2255.   Under 28 U.S.C. § 2255(f), claims are time-barred if filed more than one year after the triggering event on which the claim depends.   Here, as to Byers' challenges to Counts Three and Four under *Fowler v. United States*, 563 U.S. 668, 677 (2011), *Fowler* was decided on May 26, 2011.   This petition was not filed until July 11, 2022.   This claim is severely untimely, and must be dismissed.   *Walton v. United States*, 2015 WL 1965161 at *4 (N.D. W. Va. May 1, 2015) (holding that *Fowler* claim was time-barred).   As to Byers' claims about Wayne Jenkins' testimony in furtherance of his conviction in Count Eight, Jenkins pled guilty on January 5, 2018, which means that, at the latest, Byers had cause to raise a challenge as to Jenkins in 2018. And yet, this motion was not filed until July 11, 2022.   This claim is severely untimely as well, and must be dismissed.   *See United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000) (claims in amended petition are untimely and do not relate back).

Third, Byers' claims must be rejected because they fail on the merits.   This is because Byers has not and cannot show any of the claimed errors had a "substantial and injurious effect" on the outcome of the trial.   As to his *Fowler* claim, the trial record shows the *Fowler* standard would have been met had the *Fowler* case been decided when this matter was tried.   *See United States v. Smith*, 723 F.3d 510, 514 (4th Cir. 2013) (rejecting *Fowler* claim on collateral review because evidence adduced at trial satisfied the *Fowler* standard).   Indeed, this Court has already made the finding required here in rejecting a *Fowler* claim raised by Byers' co-defendant, Frank Goodman, who was tried at the very same trial as the one Byers is currently questioning.   *See Goodman v. United States*, 2015 WL 5735364 at *5 (D. Md. Sept. 28, 2015) (rejecting 2255 and holding that "the evidence in this case against Byers and Goodman was substantial and satisfied the 'reasonable likelihood' standard set forth in the *Fowler* case").   Similarly, as to his claim about

Jenkins, Byers has presented no evidence that any of Jenkins' testimony at trial was false. The Fourth Circuit recently rejected a similar attempt by defendants to get automatic retrials simply because a subsequently convicted GTTF officer was involved in the case. *See United States v. Barronette*, 46 F.4th 177, 196 (4th Cir. 2022). This Court should the same here.

Fourth, to the extent Byers now seeks to expand on the limited mandate this Court gave him and now challenge *all* of his convictions, this request should be roundly rejected. As an initial matter, as detailed above, jurisdiction is lacking over these claims. These are wholly new claims that not even this Court has authorized. Because the Fourth Circuit is the gatekeeper, only it can allow further expansion. And in any event, his claims are not well-taken and fail on the merits.

In sum, after ordering the brutal and cold-blooded murder of Carl Lackl, Byers now wants to escape with impunity and wipe away his convictions. There is no legal or factual basis to do so. This Court should deny his motion.

## II. BACKGROUND

### A. Byers Is Involved In Several Murders, Is Convicted, And Is Sentenced To Life In Prison.

On March 4, 2006, Byers murdered Kenneth Haynes. *United States v. Byers*, 649 F.3d 197, 201 (4th Cir. 2011). He was charged with first-degree murder in state court. *Id.* As trial was approaching, Byers learned that one of the key eyewitnesses to the Haynes murder was Carl Lackl. *Id.* Accordingly, from jail, Byers orchestrated the murder of Lackl, which was carried out by an associate of Byers. *Id.*

As a result, Byers was indicted federally on multiple charges, including:

(1) conspiracy to use interstate communication facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Count One);

(2) use of an interstate communication facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Count Two);

(3) conspiracy to murder a witness, resulting in death, in violation of 18 U.S.C. § 1512(a) (Count Three);

(4) murder of a witness, resulting in death, in violation of 18 U.S.C. § 1512(a) (Count Four);

(5) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Five);

(6) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(j) (Count Six);

(7) conspiracy to use and discharge of a firearm during and in relation to a crime of violence, causing death, in violation of 18 U.S.C. § 924(o) (Count Seven);

(8) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Eight);

(9) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Nine).

ECF 95 (Superseding Indictment).

After 23 days of trial, the jury returned a verdict finding Byers guilty on all counts charged except Count Nine.  ECF 316.  On May 4, 2009, this Court sentenced Byers to multiple life sentences.  ECF 340.  Specifically, this Court sentenced the defendant to:  two concurrent life sentences for Counts One and Two; then two more life sentences for Counts Three and Four to run consecutive to Counts One and Two; then another life sentence for Count Five, to run consecutive to the previous counts; then another life sentence for Count Six, to run consecutive to the previous

counts; and then 20-year and 10-year sentences for Counts Seven and Eight to run concurrent to the sentence in Count Five.  ECF 340.

The Fourth Circuit affirmed the convictions and the sentences on May 6, 2011.  *Byers*, 649 F.3d at 201.

**B.      Byers Files First § 2255 Motion**

On August 7, 2012, Byers filed his first motion under 28 U.S.C. § 2255.  ECF 412.  He only raised claims of ineffective assistance of counsel.  *Id.*  However, he requested, and the Court granted, additional time to supplement his habeas petition.  ECF Nos. 413, 414, 417, 418.  Byers then filed a supplemental petition on February 7, 2013, but only expounded on his ineffective assistance claims.  ECF 424.

On September 16, 2015, this Court denied Byers' habeas petition.  ECF Nos. 464, 465.  In a lengthy, 48-page opinion, this Court rejected all of the defendant's claims and affirmed the convictions and the sentences.  *Id.*

**C.      Byers Files Successive Habeas Petitions Which The Fourth Circuit Rejects**

On March 21, 2016, Byers filed a "Motion for Request of Discovery."  ECF 474.  He wanted a copy of all the discovery provided by the government because he claims he did not have an opportunity to review it during the trial phase of his case back in 2011.  *Id.*  He indicated that, with this information, he would prepare a motion for relief under Rule 60(b).  *Id.*

The government moved to dismiss this filing as an improper successive petition.  ECF 475.

Then, on August 20, 2018, Byers filed a request under 28 U.S.C. § 2244 seeking the Fourth Circuit's blessing to file a successive habeas petition.  *See* Appeal No. 18-326.  In his proposed habeas petition, he specifically indicated a desire to raise claims about Wayne Jenkins, claiming that Jenkins "is now serving a 25 year federal sentence for corruption charges."  Exhibit 1 at 6.

Additionally, in a nod to *Fowler*, Byers indicated a desire to attack his convictions in Counts Three and Four under 18 U.S.C. § 1512 because Lackl was only a state witness and had no nexus to federal law enforcement agencies. *Id.* at 12-17. In fact, Byers even cited *Fowler* in support of his request. *Id.* at 14. The Fourth Circuit summarily denied this request on September 12, 2018. Exhibit 2.

On November 29, 2021, Byers again filed a request with the Fourth Circuit to receive its blessing to file a successive habeas petition. Appeal No. 21-292. His proposed 2255 petition only concerned the charges in Count Eight and only related to the allegations of criminal conduct by Wayne Jenkins. Exhibit 3. The Fourth Circuit summarily denied these new allegations on December 6, 2021. Exhibit 4.

Ostensibly in response, on December 16, 2021, Byers filed in this Court a motion for relief under Rule 60(b)(6). ECF 529. He again only sought to attack his Count Eight conviction that was based on Jenkins' testimony, based on "newly-discovered evidence" that he learned from reading a book about the GTTF prosecution, "I Got A Monster: The Rise and Fall of America's Most Corrupt Police Squad." *Id.* at 1-2.

**D.    This Court's Latest Ruling and Byers' Latest Filing**

On March 22, 2022, this Court entered an order granting Rule 60(b)(6) relief and allowing the defendant an opportunity to filed an amended habeas petition as to two new claims, one about *Fowler* and one about Jenkins. ECF 534. In doing so, this Court reconstrued the defendant's motion for discovery (ECF 474) as a Rule 60(b) motion. *Id.* The Court then went on to award relief. However, the relief permitted was limited. Specifically, this Court's mandate provided only that: "Byers will be permitted to amend his original petition under § 2255 as to his convictions and sentences on Counts Three, Four, and Eight of the Superseding Indictment. Byers will not,

however, be permitted additional discovery at this time nor will he under any circumstances be permitted to possess the discovery material in this case." ECF 534 at 8. The Court was similarly limited in its appointment of counsel to Byers. Specifically, the Court allowed counsel, but only "to assist in amending his § 2255 petition with respect to Counts Three, Four, and Eight." *Id.*

On July 11, 2022, Byers and his counsel exceeded this Court's mandate. Specifically, Byers filed an amended 2255 petition challenging not only Counts Three, Four, and Eight, but also challenging all of his convictions, under new theories not previously presented to the Court. ECF 543.

If that were not enough, Byers has also filed a pro se motion seeking to be remanded to home confinement. ECF 553. He is now claiming—contrary to the jury's finding and the mountain of evidence in this case—that he is actually innocent of all charges. *Id.*

As detailed below, there are a number of defects in Byers' motion. As such, the government respectfully requests that the Court vacate its prior order and deny Byers' petition.

## III. ARGUMENT

### A.    This Court Lacks Jurisdiction Over Byers' Motion

First and foremost, this Court must deny Byers' amended motion for lack of jurisdiction. This is because his filing is an improper and unauthorized successive habeas petition that can only be heard in the Fourth Circuit in the first instance. Because the Fourth Circuit has not granted any freedom to Byers to file this motion (and in fact, the Fourth Circuit has repeatedly rejected his requests to raise the very issues he tries to raise here), this Court must deny his motion.

Federal law affords convicted defendants one (and only one) opportunity to mount a collateral attack on their convictions by filing a habeas petition in the district court under 28 U.S.C.

§ 2255(a).  Any such motion must be filed in the district court under strict time limits, usually within one year of the time the conviction becomes final.  28 U.S.C. § 2255(f)(1).

After that habeas petition is decided, a defendant may *not* file a second petition under any circumstances, unless and until it has been authorized by a court of appeals.  *See* 28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3).  Specifically, federal law provides that: "**Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application**."  28 U.S.C. § 2244(b)(3) (emphasis added).  The law further adds that, "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4).

Pursuant to these provisions, this district court is required to dismiss for lack of jurisdiction any successive habeas petition which has not been first authorized by the Fourth Circuit.  *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing [a successive claim].");  *see also Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) ("Because Farris did not have authorization from this Court before filing his Rule 60(b) motion, the district court did not err in denying his motion as an unauthorized successive § 2255 motion."); *Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996) ("The district court had no option other than to deny the petition. No matter how powerful a petitioner's showing, only this court may authorize the commencement of a second or successive petition.").

Nor can defendants evade these requirements by trying to couch their successive collateral attacks in the guise of a motion under Fed. R. Civ. P. 60(b).  Specifically, when the defendant files

a 60(b) motion that "attacks the substance of the federal court's resolution of a claim on the merits," then it is "not a true Rule 60(b) motion, but rather a successive habeas petition." *United States v. McRae*, 793 F.3d 392, 397 (4th Cir. 2015) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005)). As the Supreme Court noted, a motion "seek[ing] leave to present newly discovered evidence in support of a claim previously denied . . . is in substance a successive habeas petition and should be treated accordingly." *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005); *see also Winestock*, 340 F.3d at 207 (explaining that "proffers of additional evidence will usually signify that the prisoner is not seeking relief available under Rule 60(b) but is instead continuing his collateral attack on his conviction or sentence"). Where a defendant does file an improper 60(b) motion that invites the district court to entertain the merits of prior convictions, the Court must "dismiss the motion for lack of jurisdiction or transfer it to [the Fourth Circuit] so that [the Fourth Circuit] may perform [its] gatekeeping function." *Winestock*, 340 F.3d at 207.

Here, Byers has filed an improper and unauthorized successive habeas petition. He filed his first habeas petition on August 7, 2012. ECF 412. He later filed several supplements. ECF 424, 453. This Court denied Byers' habeas petition on September 16, 2015. ECF 465. As such, any petition thereafter is a second or successive petition. And reviewing what he recently filed in ECF 543, it becomes pellucidly clear that his filing is successive and unauthorized. In his filing, Byers expressly attacks the merits of his convictions. He raises new arguments and new evidence. ECF 543 (raising claims about *Fowler* and citing revelations about Wayne Jenkins' subsequent criminal conduct). As the Fourth Circuit has noted, this is the quintessential successive filing. *Winestock*, 340 F.3d at 207. This is one of those circumstances where Byers is attempting to "present[] new evidence in support of a claim already denied." *Wilson v. United States*, 2007 WL 1052474, at *1 (W.D. Va. Apr. 4, 2007). As such, this claim is not properly before this Court..

10

Under *Gonzalez*, *McRae*, and *Winestock*, the only possible construction of this filing is to call it a successive habeas petition.  And this Court lacks jurisdiction over successive petitions in the first instance.  *United States v. Goods*, 2021 WL 5563930 (4th Cir. Nov. 29, 2021) (affirming this Court's finding that it lacked jurisdiction over a successive petition where Fourth Circuit had not first authorized the filing) (citing *McRae*, 793 F.3d at 397-400).  Thus, the motion must be dismissed for lack of jurisdiction.

This conclusion is all the more directed by Byers' recent unsuccessful filings in the Fourth Circuit.  Specifically, on August 20, 2018, Byers filed a request under 28 U.S.C. § 2244 seeking the Fourth Circuit's blessing to file a successive habeas petition.  *See* Appeal No. 18-326.  In his proposed habeas petition, he specifically indicated a desire to raise claims about Wayne Jenkins, claiming that Jenkins "is now serving a 25 year federal sentence for corruption charges."  Exhibit 1 at 6.  Additionally, Byers raised a *Fowler* claim.  *Id.* at 12-14.  The Fourth Circuit summarily denied this request on September 12, 2018.  Exhibit 2.  Similarly, on November 29, 2021, Byers again filed a request with the Fourth Circuit to receive its blessing to file a successive habeas petition.  Appeal No. 21-292.  His proposed 2255 petition only concerned the charges in Count Eight and only related to the allegations of criminal conduct by Wayne Jenkins.  Exhibit 3.  The Fourth Circuit summarily denied these new allegations on December 6, 2021.  Exhibit 4.

In this way, Byers has demonstrated he knows the required procedures under 28 U.S.C. § 2244.  Here, however, he is simply trying to evade them.  After twice being defeated by the Fourth Circuit, he seeks an end-run of the Fourth Circuit by filing directly in this Court.  This Court should reject such tactics.

In sum, federal law is clear:  there is no jurisdiction in this Court unless and until a certificate is granted by the Fourth Circuit under § 2244.  As the Fourth Circuit explained in *In re*

*Goddard*, 170 F.3d 435, 437 (4th Cir. 1999), the successive habeas bar exists to ensure that defendants are afforded one—and only one—opportunity to collaterally attack their sentences. Otherwise, defendants can make serial filings raising an endless number of claims that will clog courts and frustrate finality.  The federal habeas statute was written to avoid this very scenario. Byers' motion must be denied for lack of jurisdiction.

## B.  Byers' Claims Are Time-Barred

Aside from lacking jurisdiction based on his failure to meet the pre-authorization requirement, Byers' claims are also time-barred.  This is because these claims are being brought years after they could have been brought.  There is thus no jurisdiction to consider them now.

Federal law provides narrow and restrictive time limits for the filing of habeas claims. Specifically, "[a] 1-year period of limitation shall apply to a motion under this section."  28 U.S.C. § 2255(f).  The limitation period shall run from the latest of—

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, Byers' claims are well past the applicable time bars in § 2255(f).

His claims are surely barred under § 2255(f)(1).  As detailed above, Byers filed a direct appeal of his convictions.  The Fourth Circuit affirmed in a decision issued on May 6, 2011.  *See* 649 F.3d 197.  It does not appear that Byers filed for certiorari in the Supreme Court.[1]  As such, his conviction became final when the time to seek rehearing ran by the end of May 2011. Accordingly, his current claims, filed on July 11, 2022, are severely untimely under § 2255(f)(1) because it is now 11 years after his convictions became final.

Byers makes no claims that could be saved by § 2255(f)(2).  So, this exception does not help him here.

Nor can Byers claim any solace through § 2255(f)(3).  While he raises claims under *Fowler*, that decision was issued on May 26, 2011.  *See* 563 U.S. 668.  In *United States v. Smith*, 723 F.3d 510, 515 (4th Cir. 2013), the Fourth Circuit held that *Fowler* is retroactively applicable to cases on collateral review.  However, the start of the one-year § 2255(f)(3) limitation period is still May 2011 when *Fowler* was decided.  In this way, the current motion filed in 2022 is still more than 8 years too late.  As such, it must be dismissed.  *Walton v. United States*, 2015 WL 1965161 at *4 (N.D. W. Va. May 1, 2015) (holding that *Fowler* claim was time-barred).

Nor may Byers attempt to evade these jurisdictional timing requirements through resort to some claim of equitable tolling or a claim of actual innocence.  "To be entitled to equitable tolling, [Byers] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Lawrence v. Fla.*, 549 U.S. 327, 336 (2007) (quotations omitted).  He made no attempt to make such a showing here. And even if he had tried, Byers would still fail.  He absolutely could have raised a *Fowler* claim

---

[1] Byers' co-defendant, Frank Goodman, filed for certiorari, but the Supreme Court denied it on October 17, 2011.  *See* 565 U.S. 969 (2011).

to the Fourth Circuit in 2011, but he failed to do so.  There is no showing of diligence here.  In fact, it is just the opposite in how he slept on this claim until 2018 when he first tried to raise it in the Fourth Circuit.  Nor is there any extraordinary circumstance that stood in his way.  Equitable tolling is clearly not available to him.  Nor can he claim actual innocence.  "[A]ctual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted).  To meet his burden, Byers would have had to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented [previously]."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Byers has done nothing of the kind here.  In fact, he has not addressed his untimeliness at all.  Byers isn't claiming that somehow he did not actually conspire to murder Carl Lackl; rather, he has raised belated claims that test the legal sufficiency of jury instructions and his conviction at trial under the new framework for § 1512 claims under *Fowler*.  This is the quintessence of the kind of legal sufficiency challenge for which an actual innocence claim will not apply because there is no claim of *factual* innocence.  Because there is simply no proffered basis to say he is factually innocent of the underlying offense in Counts Three and Four, Byers' claims must be deemed time-barred under § 2255(f)(3).  *See Liang v. United States*, 2021 WL 690005 (D. Md. Feb. 23, 2021) (Chasanow, J.) (dismissing time-barred habeas claim and rejecting "actual innocence" claim based on legal insufficiency where no new evidence was proffered); *Kilgore v. United States*, 2016 WL 3541228 (D. Md. June 29, 2016) (Bennett, J.) (same).  Hence, his *Fowler* claims must be dismissed for lack of jurisdiction as time-barred under § 2255(f).

Similarly, as to Byers' claims about Wayne Jenkins' testimony in furtherance of his conviction in Count Eight, these claims are also time-barred under § 2255(f)(4).  Jenkins pled

guilty on January 5, 2018, which means that, at the latest, Byers had cause to raise a challenge as to Jenkins in 2018.  And yet, this motion was not filed until July 11, 2022.  This claim is severely untimely, and must be dismissed as well.  In order to survive dismissal under § 2255(f)(4), Byers must show he acted with "due diligence."  "Section 2255(f)(4)'s reference to 'due diligence' 'is equivalent to a rule of 'inquiry notice.'"  *United States v. Nunez-Garcia*, 31 F.4th 861, 865 (4th Cir. 2022) (citation omitted).  So, if any circumstances arose that placed Byers "on inquiry notice that 'he has an interest in challenging the prior conviction," then the one-year clock under 2255(f)(4) begins to run.  The government submits that Byers had such inquiry notice when Jenkins was indicted and appeared for his initial appearance on March 1, 2017.  *See United States v. Jenkins*, GLR-17-106 (D. Md.) at ECF No. 30.  This would mean the clock ran out on March 1, 2018.  But even assuming for the sake of argument that the indictment against Jenkins being unsealed was not enough, at the very latest, Byers had to have been on inquiry notice about his ability to challenge Jenkins' testimony in support of Count Eight when Jenkins pled guilty on January 5, 2018.  *Id.* at ECF 254.  (And in fact, Byers demonstrated he was on such notice because on August 20, 2018, Byers filed a request under 28 U.S.C. § 2244 seeking the Fourth Circuit's blessing to file a successive habeas petition.  *See* Appeal No. 18-326.)  This would mean the clock ran out on January 5, 2019 at the very latest.  As such, Byers' attempt to raise claims about Jenkins now in 2022 is at least three to four years too late.  These claims must be dismissed under § 2255(f)(4).

Nor can Byers seek any end-run around § 2255(f) by somehow claiming his newly-filed claims relate back to his original habeas petition filed in 2015.  In order to relate back, the new claims must "arise out of the same conduct, transaction, or occurrence set forth in the original pleading."  *United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000) (citing Fed. R. Civ. P.

15(c)).  Relation back is measured on a claim-by-claim basis; claims must be of the same type and refer to the same time period in order to relate back.  *Id.* (holding that claims of ineffective assistance of counsel were not related to earlier claims made about sentencing enhancement, and hence new claims were untimely and did not relate back).  Here, Byers' earlier petition related only to claims of ineffective assistance of counsel.  ECF 464 at 12.  His latest claims are nothing like these earlier claims about his lawyer.  The differ in type and subject.  Under *Pittman*, they cannot relate back.

In sum, Byers' claims as to Counts Three, Four, and Eight are severely untimely.  In enacting the  Antiterrorism and Effective Death Penalty Act ("AEDPA"), which includes the time limitations in § 2255(f), Congress imposed "demanding strictures" to safeguard and ensure the "'finality of criminal convictions.'"  *Hyman v. Hoekstra*, 41 F.4th 272, 290 (4th Cir. 2022) (citation omitted).  There is no basis to evade those strictures now.  *See Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts must follow it. In AEDPA, Congress announced such a rule.").  Finality is particularly crucial here in this case where victims are involved.  As detailed below, Lackl's then-girlfriend Melinda Himes testified about the loss of Carl at the direction of Byers.  Lackl also left behind a young daughter.  There is no basis now to upset the finality of Byers' convictions when so many opportunities have already been given to Byers.  These latest attempts are simply too little too late.  This Court must dismiss under § 2255(f).

## C.    Byers' *Fowler* Claims As To Counts Three And Four Fail

In addition to being jurisdictionally-barred and time-barred, Byers' *Fowler*-related claims also fail as meritless.  The government first discusses the changes wrought by *Fowler* after Byers' convictions became final; the government then discusses the proper framework for evaluating

these claims; and the government then evaluates the trial evidence which shows the government would have met the *Fowler* standard had it been applied, and hence any *Fowler* error is clearly harmless.

Byers was convicted on April 17, 2009 of, *inter alia*, (1) conspiracy to murder a witness, resulting in death, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Three); and (2) murder of a witness, in violation 18 U.S.C. § 1512(a)(1)(C) (Count Four).  As detailed above, in 2011, the Supreme Court decided *Fowler*.  In that case, the Court clarified the proof required for a witness tampering charge under § 1512.  Specifically, the Court held "that the Government must show a reasonable likelihood that, had, e.g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Fowler*, 563 U.S. at 677.  The Court noted that "[t]he Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Id.* at 678.  Rather, the Government must only show that the likelihood of communication to a federal officer "was more than remote, outlandish, or simply hypothetical." *Id.*

The Fourth Circuit has determined how courts must analyze *Fowler* claims on collateral review.  Specifically, in *United States v. Smith*, 723 F.3d 510, 515 (4th Cir. 2013), the Court held that a defendant must satisfy the rigorous standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993) when trying to make out a *Fowler* claim on habeas review.  Under this standard, a defendant bears the burden to demonstrate that the "error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (citation omitted).  In summarizing the standard the government must meet to overcome a *Fowler* claim on collateral review under *Brecht*, the Fourth Circuit held that it was a "relatively low bar." *Smith*, 723 F.3d at

518.   In *Smith*, the Fourth Circuit held that this modest showing was easily met.  Specifically, the Court held that any *Fowler* error was harmless because the trial record showed that "McAbier [the murdered witness] was complaining about large scale gang activity and drug trafficking in her neighborhood context," and there was evidence that he was communicating with the Baltimore City Police Department ("BPD") and that the BPD was a source for funneling cases and information to the federal Drug Enforcement Administration ("DEA").  *Smith*, 723 F.3d at 518.

Underscoring how easy it is for the government to meet its burden under *Brecht* on a claim of *Fowler* error, the government's research in this case has not shown any instance in which the Fourth Circuit has ever found for a defendant on *Fowler* error on habeas review.  Other Circuits have likewise rejected such claims.  *E.g., Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 186 (3rd Cir. 2017) (rejecting *Fowler* claims on habeas where witness could have communicated information about robbery and arson crimes to federal authorities); *Aguero v. United States*, 580 Fed. Appx. 748, 753 (11th Cir. 2014) (rejecting *Fowler* claim under the *Brecht* standard because "[e]vidence at trial showed a working relationship between the MPD and the federal government, that a massive investigation results each time a police-related shooting occurs, and that standard practice existed of forwarding information from questionable shootings to the FBI.").

Against these rigorous standards, Byers' *Fowler* claims clearly fail.  And to prove, this Court need look no farther than its own opinion denying the *Fowler* claims raised by Byers' co-defendant's, Frank Goodman.  *Goodman v. United States*, 2015 WL 5735364 at *5 (D. Md. Sept. 28, 2015).  In that opinion, this Court held that:

> **Just as in the *Smith* case, the evidence in this case against Byers and Goodman was substantial and satisfied the "reasonable likelihood" standard set forth in the *Fowler* case**. The evidence at trial indicated possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Furthermore, the evidence at trial indicated prior acts of obstruction of justice, firearm violations, and drug trafficking. As the Supreme Court noted in the *Fowler* case, the Government must

merely establish the "likelihood of communication to a federal officer," which must have been "more than remote." *Fowler*, 131 S. Ct. at 2052.

> As in the *Smith* case, the evidence in this case involved extensive drug activity, the type of which is addressed jointly by the Drug Enforcement Administration with the Baltimore City Police Department. Accordingly, the pre-*Fowler* jury instructions in this case were harmless error just as they were in the *Smith* case. As the Fourth Circuit recognized in *Smith*, the pre-*Fowler* jury instructions did not have a substantial and injurious effect or influence in determining the jury's verdict. Consequently, these instructions constitute harmless error.

*Id.* (emphasis added).

This finding should be dispositive of Byers's *Fowler* claims here. There is simply no basis for this Court to backtrack on the factual findings it made in Goodman's habeas proceedings. Both Byers and Goodman were tried together. The record has not changed. This Court's prior decision should end the matter.

But even if we look more closely at the voluminous record of this trial, it is clear that this Court's previous opinion in *Goodman* was correct and well-supported. Specifically, there was a mountain of evidence about drugs and drug-dealing that surely would have led to federal involvement (and potential prosecutions under 21 U.S.C. § 841 *et seq*.) had Byers not ordered the murder of Lackl. Specifically, there was testimony that Lackl himself was using drugs, and his friend Connie Mays was using drugs too. *See* Exhibit 5 (Testimony of Connie Mays) at 7-8; Exhibit 6 (Testimony of Malinda Humes) at 15. There was also evidence that Byers was selling drugs. *See* Exhibit 7 (Testimony of Patrick Byers, Sr.) at 4, 8-11; Exhibit 8 (Testimony of Det. Thomas Martin) at 9. Additionally, there was testimony that Byers was serving as an informant on other drug dealers. Exhibit 9 (Testimony of Wayne Jenkins) at 3-7. There was also evidence that Marcus Pearson, Byers' associate, was selling drugs on Normal Avenue and was also buying drugs from Frank Goodman. *See* Exhibit 10 (Testimony of Marcus Pearson) at 2-4, 21. There

was also evidence that the location where Byers and his crew frequented was used for drug trafficking.  Exhibit 10 at 2-4; Exhibit 9 at 7-9.  Finally, there was evidence that Haynes had prior drug convictions.  Exhibit 8 at 16.  If Lackl is not murdered, there is more than a reasonable likelihood that Lackl's information would have been communicated to federal authorities. Specifically, you have a drug user (Lackl) who identified a police informant who was also a suspected drug dealer (Byers) as being involved in a shooting of another individual with previous ties to the drug trade (Haynes).  There is more than a remote possibility that Lackl's information would be communicated to federal authorities as these are precisely the kind of narcotics-related prosecutions undertaken by the federal government.

There was also evidence of unlawful gun possession by Byers, which would have led to federal investigation and potential charges under 18 U.S.C. § 922(g).  Specifically, Lackl relayed that he observed Byers throw a gun on top of a roof.  Exhibit 8 at 8.  Byers was a convicted felon and therefore unable to possess firearms.  *See State of Maryland v. Byers*, Case No. 103308007 (Balt. City Cir. Ct.).  Given the association of Byers with violence and the use of the gun in the Haynes murder, and given his prohibited status, Lackl's information about Byers' possession of a gun was quite likely to be reported to federal authorities.  Indeed, Baltimore City Police detectives screen all gun-related arrests for potential federal prosecution.  Lackl's eyewitness account of Byers' possession of the gun would have been necessary in any federal prosecution.  Hence, this provides another basis to say there was a reasonable likelihood that Lackl's information would have been communicated to federal authorities if he were not killed before he had the chance.

There was also evidence of the use of firearms in connection with drug trafficking, which would constitute a separate federal violation under 18 U.S.C. § 924(c).  *See* Exhibit 10 at 18.

There was also evidence of gang involvement, specifically, the Bloods, and hence there was a reasonable likelihood of federal investigation involving RICO charges under 18 U.S.C. § 1862.  Specifically, there was testimony that Marcus Pearson, Michael Randle, Jonathan Cornish and others who were operating on Normal Avenue were all members of the Bloods gang.  Exhibit 10 at 13; Exhibit 11 (Testimony of Jonathan Cornish) at 1-4.  While there was testimony that Byers and Goodman were not Bloods, nevertheless the evidence showed Byers was in connection with Bloods members and therefore was able to pull off this murder with the help of Bloods members.  Had Lackl survived, it is reasonably likely that an investigation would have ensued into Byers and his associates, which would have then led to a RICO investigation.  Indeed, the information passed on by Lackl is precisely the kind of evidence on which RICO cases depend.

There was also evidence of potential witness tampering, which is a violation of federal law as well under 18 U.S.C. § 1512.  Specifically, Malinda Humes testified that she told Lackl to not get involved because "they would wind up killing him," referring to the people against whom he might testify.  Exhibit 6 at 19.  Had Lackl lived, there is more than a remote possibility that that admonishment from Humes would have been communicated to federal officials.  It is standard policy for the government to inquire of witnesses about their safety and whether they received any threats.  Lackl would have reported what Humes said, and federal charges like the ones brought here would have reasonably followed.

In sum, this Court's previous decision in *Goodman* was correct.  There was a reasonable possibility that had Lackl not been killed, he would have conveyed information to federal authorities.  Indeed, the record here shows it was a near certainty such communication would have happened.  This case had all the indicia required for multiple federal prosecutions.  Considering

that *Fowler* set a "low bar" for what is required to overcome a *Fowler* claim on habeas, *Smith*, 723 F.3d at 518, it is clear that the government's proof exceeded that low bar here by a country mile.

Byers resists this straightforward conclusion.  ECF 543 at 3-14.  First, he argues that this Court erred when it decided *Goodman*.  Byers is wrong.  As detailed above, this Court's previous finding was amply supported by the record.  Byers' currently pending motion cannot change the record. The record here is clear, and it shows evidence of multiple federal investigations and prosecutions that would have reasonably flowed from Lackl's identification of Byers as the killer of Haynes.  There were clear gun, drug, and gang avenues of potential federal interest.  Second, Byers focusses myopically on the fact that he was being tried in state court for Haynes' murder, and he avers that murder is a crime typically prosecuted by the State.  Again, Byers is wrong, this time in two ways.  He is wrong to focus only on the state charges against Byers.  The test in *Smith* is whether there is a reasonable likelihood of the information held by Lackl being shared with federal authorities.  So, in this way, it matters not what Byers was charged with in state court. Rather, it matters that Lackl was a drug user, and he identified a drug dealer who was also a police informant as being involved in the shooting, who also happened to be prohibited from possessing a gun under federal law.  This is precisely the type of scenario that would get communicated to federal law enforcement.  Moreover, aside from focusing only on the state charges, Byers is wrong to aver that murder is only prosecuted in state court.  Gang-related murders are prosecuted in federal court.  *See* 18 U.S.C. § 1959.  Murder in the course of using a firearm in furtherance of drug trafficking is also prosecuted in federal court.  *See* 18 U.S.C. § 924(j).  Killings under state law are also routinely used as overt acts in furtherance of RICO charges.  In this way, Byers is wrong to contend that murder prosecutions are only in the domain of state courts.

In sum, even if we evaluated Byers' claims as to Counts Three and Four on the merits under *Fowler*, it is clear that they fail as a matter of law.

## D.     Byers' Claim As To Count Eight Fails

Similarly, his attempt to use the 2018 conviction of Wayne Jenkins in the GTTF case to assail his conviction under Count Eight also fails to withstand scrutiny.  Surprisingly, Byers does not point to a single portion of Jenkins' testimony which he claims is suspect.  *See generally* ECF 543 at 14-18.  He merely avers that "if this Court finds that Jenkins offered perjured testimony," *id.* at 19, then he should get relief.  He is wrong on several levels.

First, Byers is wrong to aver he met his burden for this claim to proceed any further.  It is his burden to demonstrate the falsity of Jenkins' testimony.  It is his burden to come forth with "newly discovered" evidence which might exonerate him.  And he cannot claim to carry that burden simply by pointing to Jenkins' subsequent conviction and filing a self-serving affidavit that Jenkins' testimony was somehow false.  This is because Jenkins' conviction in the GTTF case was wholly unrelated to Jenkins' actions in the Byers case.  Byers cannot simply paint with such a broad brush and claim that because of Jenkins' conviction, each and every case that Jenkins ever touched is now subject to vacatur.  The Fourth Circuit recently rejected this very argument in *United States v. Barronette*, 46 F.4th 177, 196 (4th Cir. 2022).  In that case, GTTF officers Wayne Jenkins, Evodio Hendix, and Marcus Taylor were involved in the arrest of Linton Broughton, and they later found a gun that Broughton discarded.  On appeal, the defendants claimed that any evidence resulting from this seizure was "tainted" and must be disregarded simply because of Jenkins' subsequent conviction.  The Fourth Circuit rejected this argument, holding that: "Appellants do not offer any evidence, for example, that Broughton's arrest was tainted by any of the officers' unlawful activity. They also cite no legal authority for their assertion that we should

disregard the evidence. Additionally, the officers' version of the events was corroborated by [other independent evidence]." *Id.* The same reasoning applies here. First, Byers presents no evidence that Jenkins was engaged in any unlawful activity as to his case. Indeed, the testimony from Jenkins was that Byers called him to try to play him and spin an alternative story of disinformation about the Haynes murder. Exhibit 9 at 12-13. Second, Byers cites no precedent which indicates that a court can ignore the testimony of every witness who was subsequently convicted, even if there is no evidence of any impropriety with regard to the testimony in their case. And third, the testimony provided by Jenkins was corroborated by other independent evidence which did not depend solely on Jenkins' word. For example, while Jenkins testified that Byers was a drug dealer, that fact was confirmed by Byers' own father. Exhibit 7 at 4. Also, while Jenkins testified that Byers called him to provide information, that fact was corroborated by phone records. Exhibit 9 at 4. In sum, Byers has failed to carry his burden to demonstrate any reason to question Jenkins' testimony in his case. This should end the inquiry.

Second, Byers is also wrong to aver that Jenkins' testimony was somehow pivotal to his conviction on Count Eight. It was not. In fact, Jenkins' testimony had little if anything to do with Byers' conviction for being a felon in possession. The jury heard numerous other witnesses recount Lackl's report that he saw Byers with a gun on the day of Haynes' murder, and that Byers tossed the gun onto a rooftop. Exhibit 6 at 19; Exhibit 8 at 8. This testimony was permissible under Fed. R. Evid. 804(b)(6) because Byers killed Lackl to prevent his testimony. This testimony alone would be enough to convict Byers. Additionally, the jury heard evidence from Carlisle Coleman about Byers' previous possession and use of a gun in 2004. Exhibit 12 (Testimony of Coleman) at 7-8. That was the key evidence about Byers' being unlawfully in possession of a gun

on the day in question.  Jenkins' testimony was therefore not material to his conviction on Count Eight.

**E.    Byers Should Not Be Permitted To Challenge His Other Convictions**

As detailed above, this Court granted Byers and his counsel limited relief.  This Court allowed only a narrow amended habeas petition addressing Counts Three, Four, and Eight.  ECF 534.  Byers did not abide by this order.  Rather, he is now seeking to challenge all of his prior convictions.  ECF 543.  This Court should reject this over-reach, for several reasons.  First, this is contrary to the Court's mandate and order.  Second, this is still a wholly unauthorized successive habeas petition; there is no jurisdiction to consider these additional claims, just as there is no jurisdiction to consider the claims as to Counts Three, Four, and Eight.  Third, as detailed above, to the extent Byers' expansion claims stem from Jenkins' 2018 conviction, ECF 543 at 20, those claims are time-barred under § 2255(f), and there is no basis to believe that Jenkins' testimony had any material effect on these claims, particularly given how there was a mountain of non-Jenkins-related testimony and evidence that supported Byers' convictions.

**F.    Byers' Expanded Claims As To Counts Five, Six, and Seven Fail**

Finally, even if we address Byers' expanded claims as to Counts Five, Six, and Seven, the convictions must still be upheld.

As detailed above, Byers was convicted of: (1) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Five); (2) use and discharge of a firearm during and in relation to a crime of violence, causing death by murder, in violation of 18 U.S.C. § 924(j) (Count Six); and (3) conspiracy to use and discharge of a firearm during and in relation to a crime of violence, causing death, in violation of 18 U.S.C. § 924(o) (Count Seven).  As detailed in Byers' filing, these charges

were based on the predicate crime of murder-for-hire, in violation of 18 U.S.C. § 1958, which was charged in Counts One and Two.  ECF 543 at 21.  Byers claims that murder-for-hire is not categorically a crime of violence, and hence these predicates cannot support the charges in Counts Five, Six, and Seven.  He cited a recent admission by the Solicitor General in the Supreme Court on this point.

As an initial matter, Byers is correct is noting that the Solicitor General of the United States filed a brief in *Grzegorczyk v. United States*, __ U.S.__, 2022 WL 2347941 (2022), in which the government conceded that a § 1958 charge is not categorically a crime of violence.  However, that does not end the matter here, for several reasons.

First, the Supreme Court did not accept the government's concession in *Grzegorczyk*.  Rather, the Court denied certiorari in that case.  *Id.*  And in a concurring opinion joined by four other justices (thus signaling the support of five justices of the Court, a majority), Justice Kavanaugh indicated that because Grzegorczyk pled guilty, he waived his right to challenge the validity of his underlying predicate conviction.  *Id.*  In this way, *Grzegorczyk* is inapposite here inasmuch as Byers did not plead guilty, and given that the Court did not accept or endorse the government's concession.

Second, Byers also neglects to mention that there is controlling precedent on this point. Specifically, in *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021), the Fourth Circuit held that "conspiracy to commit murder for hire where death results, in violation of § 1958(a), is a crime of violence under § 924(c)(3)'s force clause, and accordingly we reject Runyon's argument that his conviction under § 924(c)(1), (j)(1) is invalid."  Regardless of any concession by the government, this Court is still bound by Fourth Circuit precedent.  This precludes this Court from awarding any relief based on this challenge.

Third, and finally, Byers' claims falter because alternative predicates supported the charges in Counts Five, Six, and Seven.  Specifically, as Byers admits, the substantive charges in Counts Three and Four also supported the charges in Counts Five, Six, and Seven.  ECF 543 at 22.  Byers makes no claim that these were not categorically not crimes of violence.  And in fact, in *United States v. Mathis*, 932 F.3d 242, 264-65 (4th Cir. 2019), the Fourth Circuit held that witness tampering by murder in violation of Section 1512(a)(1) is categorically a crime of violence under the force clause of Section 924(c)(3)(A).  And the Fourth Circuit has held that no relief can be awarded where a 924(c) claim is supported by both valid and invalid predicates.  *See United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (denying habeas relief because  "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate").  Hence, there is no legal basis to disturb Byers' other convictions.

## IV.  CONCLUSION

Byers is a murderer and a purveyor of violence.  He shot Carlile Coleman and left him for dead in his home.  *Byers*, 649 F.3d at 201.  He then shot and killed Haynes.  *Id.*   And then he ordered the murder of Carl Lackl to prevent him from testifying.  *Id.*  These crimes struck at the heart of our judicial system, preventing an eyewitness from providing truthful evidence to a jury and cowing other witnesses into silence.  This Court rightly sentenced the defendant to multiple life sentences for these heinous acts.  There is simply no basis in law or fact to revisit them.  Byers received all the process he was due, and then some.  The Fourth Circuit has rejected these claims.  This Court should too.  The government respectfully asks this Court to deny Byers' amended habeas motion.

Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____
Jason D. Medinger
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Phone: (410) 209-4974